In the Matter of the Application of GEORGE SMITH for a Writ of Certiorari to JAMES J. MARTIN and Others, as Police Commissioners of the City of New York, Constituting the Board of Police of the Police Department of the City of New York.

*Written memoranda — use of, to refresh memory and its admission in evidence, distinguished — corroboration of a witness by entries in his books.*

A written memorandum or entry, made by a witness at or about the time of a transaction, where such entry is known at the time by the witness to be correct, may be referred to by him for the purpose of refreshing his memory.

It is only where the witness has no memory in regard to the transaction, but is willing to swear to the truth of the memorandum, and that it was made at or about the time of the occurrence, and that, although the witness has no present recollection, he is confident that it truly related the circumstances, that such memorandum may be admitted in evidence.

The testimony of a witness cannot be corroborated by the entries made by him in his own books.

CERTIORARI issued out of the Supreme Court and attested on the 6th day of September, 1894, directed to James J. Martin, John C. Sheehan, Charles H. Murray and Michael Kerwin, as police commis-

sioners of the city of New York, constituting the board of police of the police department of the city of New York, commanding them to certify and return to the office of the clerk of the county of New York all and singular their acts, proceedings, and documents in relation to the removal or dismissal of the relator from the police department of the city of New York.

*Elihu Root*, for the relator.

*Francis L. Wellman*, for the respondent.

Van Brunt, P. J. :

Upon the argument of the writ of certiorari in the case of Captain Cross and of the relator in this proceeding, it was conceded that the testimony as against both relators was of the same character, and that the disposition of the one case would necessarily control the other.

But in view of the conclusion at which we have arrived in the case of Captain Cross, it may be necessary to consider some testimony which was offered against both of these parties, but which is only competent as against the relator Smith. We refer to the testimony of Rhoda Sanford and that relating to the alleged corroboration of her evidence. It appears that Rhoda Sanford was a keeper of a house of prostitution at No. 24 Bayard street, and she claims to have paid the relator certain sums of money. The same course was pursued upon the cross-examination of this witness to prevent the relator from showing the then present whereabouts of Rhoda Sanford and the influences by which she was surrounded shortly prior to giving her testimony, thus precluding him from having applied the ordinary tests in respect to the weight to be given to the testimony of this witness, who, it is worthy of remark, did not claim to have reformed.

It is to be observed that the invasion of this right tended manifestly to produce injury to the relator because of the fact that it is admitted that this witness, in her examination before the Lexow committee, deliberately testified falsely, but it is now claimed that her testimony is correct. The circumstances causing such change of heart might very well be inquired into in order that her testimony should be properly weighed.

It was claimed that Rhoda Sanford's testimony was corroborated

by the evidence of witnesses showing that she kept a house of prostitution — about which there was no dispute — and also by entries in certain alleged books which she claimed to have kept.

The evidence in regard to the fact of the existence of the house of prostitution certainly did not corroborate the witness in respect to the disputed facts. The alleged books of account were of the most suspicious character even if they could be considered as evidence in the case at all. She first commenced keeping the books five or six months before the happening of these events. There is no evidence that she ever kept books before, and an inspection of the entries therein shows beyond question that they were not an account of all the expenditures of her establishment, neither were they books of account showing the receipts and expenditures which she had made. An inspection of these entries necessarily renders one suspicious as to the authenticity of more than one of such entries. The fact that these books were taken away from her some time prior to her examination before the Lexow committee, and that she had not seen them since, argues but little in favor of their verity.

But we have yet to learn that a witness can be corroborated by the entries in his or her own books. It would be a novel method of manufacturing testimony to allow one's own letters and entries in one's own books to be offered in evidence as corroborating the statement of such witness. A written memorandum or entry made by a witness at or about the time of the transaction, where such entry is known at the time by the witness to be correct, may be referred to by him for the purpose of refreshing his memory; and it is only where the witness has no memory in regard to the transaction, but is willing to swear to the truth of the memorandum, and that it was made on or about the time of the occurrence, and that although the witness has no present recollection, he or she is confident that it truly related the circumstances, that such a memorandum may be admitted in evidence.

In the case at bar it is claimed that the evidence of this discredited witness is to be supported by entries in these books which it is alleged were her business books — it appearing that she had never kept any books until just previous to these transactions — and credit is claimed for her upon this ground. It would be very easy for witnesses to manufacture any desired amount of corroborating evidence if such

a rule were to be adopted. It is apparent that there was no corroboration of the testimony of this witness, and that an inspection of these entries shows that they are suspicious in themselves. The witness was thoroughly discredited and shown to have no regard for her oath even aside from her occupation, and as this was the only additional evidence against Smith, it would seem that her testimony must be rejected and the same judgment pronounced as in the case of Cross.

The judgment of the police commissioners should be reversed, and the relator reinstated, with costs.

O'BRIEN and PARKER, JJ., concurred.

Judgment of commissioners reversed, and relator reinstated, with costs.